UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| GOLDEN WEST HOLDINGS, LLC, an Idaho limited liability company,<br><br>    Plaintiff,<br><br> v.<br><br>BBT HOLDINGS, LLC, a California Limited liability company; TED LEROY LARSEN; individually; PEGGY K. LARSEN, individually; BROCK K. LARSEN, individually; BARBARA A. THOMAS, aka BARBARA A. LARSEN, individually; BRIAN L. LARSEN, individually; JULIE SCHINDLER, individually; and DOES I through X,<br><br>    Defendants. | Case No. 1:10-cv-337-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is the Motion for Summary Judgment filed by Plaintiff Golden West Holdings, LLC, ("Golden West"), on July 30, 2010, and the Motion to Strike the affidavits of Donna Jarman, filed on August 23, 2010, by Defendants/Counterclaimants BBT Holdings, LLC, and the Larsons (collectively, "BBT"), which affidavits Plaintiff filed in support of its motion for summary judgment. At the parties' request, the Court postponed the deadline for filing a responsive memorandum to the Motion for Summary

Judgment until the Motion to Strike was decided, as BBT contended several statements and exhibits should be stricken from the record under Fed. R. Evid. 408. A hearing on the Motion to Strike was conducted on October 5, 2010. At that time, the Court took the Motion to Strike under advisement, advising the parties that the Court would not rule upon the motion until it considered the statements in the context of the Motion for Summary Judgment. The Court also ordered BBT to amend the Motion to Strike to clarify which portions of the affidavit BBT contended were objectionable. Defendants filed their Amended Motion to Strike on October 19, 2010. (Dkt. 44.)

The Motion for Summary Judgment is now fully briefed. A hearing was conducted on November 2, 2010, during which all parties appeared and presented oral argument. The Court also invited additional argument on the Motion to Strike at that time. Since then, Plaintiff filed a motion on November 16, 2010, inviting the Court to take judicial notice of a memorandum decision and order in *Performance Chevrolet, Inc. v. Market Scan Information Sys., Inc.*, Case No. 1:04-cv-244-BLW (Nov. 18, 2005). (Dkt. 52.) Upon careful consideration of the parties' arguments, the briefing, and the relevant authorities, the Court will deny the Motion for Summary Judgment and the Motion to Strike. The motion to take judicial notice also will be denied.

# FACTS AND PROCEDURAL HISTORY

The following material facts, unless otherwise noted, are undisputed.

This lawsuit arises from BBT's purchase from Golden West in or about July of 2006 of a storage facility and car wash business (the "Property"), known as the A-1 Storage and Car Wash, located in McCall, Idaho. Defendant Ted Larson, the managing member of BBT, submitted an offer to purchase the Property that was accepted by Donna Jarman, the principal of Golden West, on July 10, 2006. (Aff. of Jarman Ex. F, Dkt. 14-6.) The parties agreed to a purchase price of $4,050,000, with $2,850,000 allocated for the purchase of real property, $1,100,000 for the purchase of the improvements to the property, and $100,000 allocated for the purchase of personal property and equipment. (Aff. of Jarman Ex. F, Dkt. 14-6 at 18.) Golden West agreed to finance a portion of the purchase price in the amount of $607,500 pursuant to a Promissory Note secured by a second deed of trust. (*Id.*)

As a condition of the sale, BBT was to perform a "personal due-diligence including but not limited to review of tax returns, balance sheets, staff salary/wages, benefits, utilities, insurance, and inspections of any and all types. The due diligence period will end 14 days after receipt of the Preliminary Title Report. . . ." (Aff. of Jarman Ex. F, Dkt. 14-6 at 2.) Under Section 9 of the Agreement, BBT chose to conduct inspections, and the closing of the transaction was expressly conditioned upon BBT's satisfaction or waiver of several contingencies, including "review of seller's relevant business documents." (Aff. of Jarman Ex. F, Dkt. 14-6 at 3.)

Golden West agreed to provide BBT business operating statements and financial information, tax returns, and occupancy information. (Aff. of Jarman Ex. F, Dkt. 14-6 at 3.) Absent written notice of "disapproved items," BBT was deemed to have completed all inspections, investigations, review of applicable documents and disclosures, and to have elected to proceed with the transaction. (*Id.*)

Ms. Jarman represented in her Affidavit that she provided updated financial information to BBT and its principals up to the point of sale, both verbally and through written data provided through her real estate agent. (Aff. of Jarman at 4, Dkt. 14.) Specifically, Ms. Jarman asserts that "to the best of my knowledge, in early 2006, I provided the Defendants with information concerning the expenses and income of the storage and car wash business. At that time, I had the tax returns and financial information for 2004, but not for 2005, as they had not yet come out." (Aff. of Jarman at 4, Dkt. 14.) The only financial record provided to the Court and attached to the Affidavit of Ms. Jarman is six pages of the 2005 Return of Partnership Income for Golden West. (Aff. of Jarman Ex. E.) The 2005 Return indicates net earnings for the Property of $156,422.

Defendant Larson, on behalf of BBT, reviewed "documentation provided . . . by Plaintiff in the summer of 2006. . . . the documentation provided purported to include accurate information regarding the income and expenses of the Plaintiff during its operation of the A-1 Storage and Car Wash facility during years 2003, 2004, 2005 and part of 2006." (Aff. of Larsen ¶ 3–4, Dkt. 41.) According to BBT, Golden West provided

its tax returns for 2003 and 2004. (Aff. of Larson ¶ 6, Dkt. 41.) BBT claims it received no additional information after July of 2006. (Aff. of Larsen ¶ 14, Dkt. 41.) On or about August 14, 2006, Defendant Larson gave Ms. Jarman a document purporting to be a valuation assessment based upon the 2003, 2004, and 2005 tax returns of the car wash and storage business, along with cash flow calculations, prepared by a third party. (Aff. of Jarman Ex. H, Dkt. 14-8.) Exhibit H represents that the estimated 2006 net income for the Property would be $25,000, while the listed 2005 net income was $185,000.

Addendum E to the Purchase and Sale Agreement, dated August 14, 2006, indicated that "the buyers have completed their due diligence and inspections period and hereby declare all conditions and contingencies to be satisfied and/or waived. Buyers are at this time depositing an additional ten thousand dollars earnest money. . . ." (Aff. of Jarman Ex. F, Dkt. 14-6 at 13.) The parties agreed to close on or before November 15, 2006. (*Id.*, Dkt. 14-6 at 16.) Addendum H, dated November 9, 2006, indicated title to the Property would be in the name of BBT, and the Seller would provide completed statements showing accounts payable, accounts receivable, prepaid accounts, and cash on hand as of the date of closing. (Aff. of Jarman Ex. F, Dkt. 14-6 at 18.)

On November 15, 2006, BBT, together with the other named defendants, executed a Promissory Note in the original principal amount of $607,500.00, in favor of Golden West for the purchase of the Property, which Note is secured against the Property pursuant to a Deed of Trust recorded in Valley County, Idaho. (Aff. of Jarman Exs. A, B, Dkt. 14-1, 14-2.) According to the terms of the Golden West Note, interest only payments

in the amount of $4,050 were due each month until November 15, 2010, when all principal and interest would then be due and payable. (Compl. Ex. A, Dkt. 1; Aff. of Jarman Ex. A, Dkt. 14-1.) The Note specified also that, if there was a default in payment of any installment when due, the "whole sum of principal and interest shall be come immediately due . . . ." (*Id.*) The Golden West Note and Deed of Trust were recorded subsequent to, and therefore subordinate to, a first Deed of Trust held by Home Federal Bank in the original principal amount of $2,835,000.00, which debt the Property also secures. (Aff. of Jarman Ex. B, Dkt. 14-2.)

Beginning in December of 2009, BBT ceased paying the monthly installments due and owing under the Golden West Note. (Aff. of Jarman at 14, Dkt. 14.)[1] The parties tried unsuccessfully to negotiate a solution until Golden West filed this lawsuit on June 9, 2010. The Complaint alleges BBT breached the terms of the Note by failing to pay the monthly payments. (Dkt. 1.) BBT removed the action to this Court on July 1, 2010. (Dkt. 1.) BBT did not dispute Golden West's representation that, as of June 3, 2010, the total amount due and owing is $639,090, representing principal and accrued interest to date with interest continuing thereon a the rate of $141.05 per day. (Aff. of Jarman at 9, Dkt. 14 at 9.)

During discovery in this case, Defendant Larson reviewed the "actual financial

---

[1] Although BBT claimed in its Answer that Golden West agreed to suspend payments under the Golden West Note until June of 2015, and that Golden West has itself breached the parties' agreement by filing the Complaint, (Ans. ¶ VIII, Dkt. 2), the opposing affidavit of Mr. Larson contains no reference to this alleged agreement.

records" and "compiled accurate summaries of the expenses and income as purported by"
Golden West, and the summaries allegedly "illustrate the discrepancies from the actual
records." (*Id*. ¶ 6, Ex. A.) According to Defendant Larson's recent review, he asserts that
Golden West under reported income of $79,288 in tax year 2003, and under reported
income of $96,213 in tax year 2004. (*Id*. ¶ 8.) Defendant Larson then identified a
dramatic increase in 2005 income to $139,398, with no corresponding expenses shown.
(*Id*.¶ 9.)

Larson asserted that Golden West over reported income in 2005 by $3,114. (*Id*. ¶
12.) Accordingly, Defendant Larson stated that the records actually show a flat revenue
stream, not the "100% increase Plaintiff claimed in reporting income from $49,000 to
$57,000 then miraculously jumping to $139,000 from 2003 to 2005. In reality, the income
was nearly flat as a result of Plaintiff's under reporting income in early years and hiding
expenses in later years." (*Id*. ¶13.) Finally, Defendant Larson represented his
documentation illustrated the "failure to report expenses represented in the form of
payments to Donna Jarman's son, Mark Rhodes." (*Id*. ¶ 15.)

Defendant Larson, in reliance upon the documentation provided at the time of the
purchase negotiations, made recommendations to the other members of BBT, and claims
had he been aware of the true state of the finances of the Property, such information
would have "negatively impacted" the decision by the members of BBT to purchase the
Property. (*Id*. ¶ 18.) Had Defendant Larson known of the true revenue stream, he claims
he would have known that "any significant growth in annual revenue was unrealistic in

light of actual expenses," and the failure to report expenses "would have affected the accuracy of the financial information and the projection of the business's ability to earn income." (*Id.* ¶¶ 15, 18.)

BBT brought two counterclaims, the first requesting rescission of the contract based upon mutual mistake, and the second asserting damages for fraud. BBT contends Golden West misrepresented the amount of income generated by the storage facility and car wash business for the three years prior to BBT's purchase, and had BBT known the true facts BBT would not have purchased the Property. Golden West denies BBT's claims.

## DISPOSITION

## 1. Motion for Summary Judgment

### A. *Summary Judgment Standards*

Motions for summary judgment are governed by Fed. R. Civ. P. 56(c)(2), which provides, in pertinent part, that judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).

A moving party may show that no genuine issue of material fact exists by demonstrating that "there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party meets the requirement of Rule 56 by either showing that no genuine issue of material fact

remains or that there is an absence of evidence to support the non-moving party's case, the burden shifts to the party resisting the motion who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). It is not enough for the [nonmoving] party to "rest on mere allegations or denials of his pleadings." *Id.* Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

In determining whether a genuine issue of material fact exists, facts and inferences must be viewed most favorably to the non-moving party. To deny the motion, the court need only conclude that a result other than that proposed by the moving party is possible under the facts and applicable law. *Aronsen v. Crown Zellerbach*, 662 F.2d 584, 591 (9th Cir. 1981). The Ninth Circuit has emphasized that summary judgment may not be avoided merely because there is some purported factual dispute, but only when there is a "genuine issue of material fact." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 500 (9th Cir. 1992). The Ninth Circuit has found that, to resist a motion for summary judgment, the non-moving party:

> (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the nonmoving party's claim implausible.

*British Motor Car Distrib. Ltd. v. San Francisco Automotive Indus. Welfare Fund*, 882

F.2d 371, 374 (9th Cir. 1989).

**B.** *Analysis*[2]

(1) *Plaintiff's Claim for Breach of Contract*

The burden is upon the claimant to show "the making of the contract, an obligation

assumed by defendants, and their breach or failure to meet such obligation." *Reynolds v.*

*Am. Hardware Mut. Ins. Co.*, 766 P.2d 1243, 1246 (Idaho 1988). A contract is not formed

unless there is a distinct understanding as to all its terms. *Potts Constr. Co. v. North*

*Kootenai Water District*, 116 P.3d 8, 11 (Idaho 2005).

There is no disputed issue of material fact that the parties in this case intended to

form a contract, that all parties understood the terms of the Promissory Note, and the

repayment terms under the Note were clear and unambiguous. BBT borrowed

$607,500.00 from Golden West, agreed to pay interest only payments of $4,050.00 on a

monthly basis, and failure to pay constituted a default under the Note. BBT does not

dispute Golden West's assertion that, in December of 2009, BBT failed to pay the

monthly payment, and has failed to pay thereafter. Accordingly, Golden West has met its

burden upon summary judgment and established that there is no disputed issue of material

fact regarding its claim for breach of contract based upon the Note.

As for the amount of damages Golden West has suffered as a result of BBT's

breach, the terms of the Note specify that, upon default, the whole sum of principal and

---

[2] The parties relied upon Idaho law, and therefore do not appear to dispute that Idaho state law applies in this diversity action. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)

interest at the rate of 8% per annum is immediately due. The Note also specifies that a late fee in the amount of 10% of the payment due will be assessed to any payment fifteen days past due. Golden West failed to provide an accounting as to the total amount of principal, interest, and late fees accrued. However, BBT does not dispute Ms. Jarman's representation that the total amount of indebtedness, including interest as of July 29, 2010, is $639,090 with interest accruing at the rate of $141.05 per day.

Nevertheless, despite the lack of any dispute as to the fact of non-payment and damage suffered, BBT asserted fraud as an affirmative defense in its answer to Golden West's breach of contract claim, as well as in an independent counterclaim. (Ans. at § XI, Dkt. 2.) Therefore, to determine whether summary judgment can be granted, the Court must consider the fraud claim.

(2) *Defendants' Affirmative Defense and Counterclaim for Fraud*

Fraud requires: (1) a statement or a representation of fact; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity; (5) the speaker's intent that there be reliance; (6) the hearer's ignorance of the falsity of the statement; (7) reliance by the hearer; (8) justifiable reliance; and (9) resultant injury. *Partout v. Harper* 183 P.3d 771, 776 (Idaho 2008) (citing *Maroun v. Wyreless Sys., Inc.*, 141 Idaho 604, 615, 114 P.3d 974, 985 (2005)). A three-year statute of limitation for fraud is established by Idaho Code § 5-218(4). This section provides that a cause of action for fraud is not deemed to have accrued until discovery by the aggrieved party of the facts constituting the fraud. *Mason v. Tucker and Assoc.*, 871 P.2d 846, 852 (Idaho Ct. App.1994). The

party alleging the fraudulent misrepresentation has the burden of proving all the elements of fraud by clear and convincing evidence. *Faw v. Greenwood*, 613 P.2d 1338, 1340 (Idaho 1980).

One of the elements that must be proven to establish fraud is justifiable reliance upon a false statement or representation. *Lindberg v. Roseth*, 46 P.3d 518, 522 (Idaho 2002). "[W]hen a purchaser is given the opportunity to conduct an independent investigation of the records and does so, . . . he is not entitled to rely on alleged misrepresentations of the seller." *Faw v. Greenwood*, 613 P.2d 1338, 1340 (Idaho 1980). Because the investigation must foreclose actual reliance upon the alleged misrepresentation, the investigation actually made must be of records that would disclose the inaccuracy of the representation. *Watson v. Weick*, 112 P.3d 788, 795 (Idaho 2005). It is not a defense that the party alleging fraud could have ascertained the truth by conducting a more thorough investigation. *Faw*, 613 P.2d at 1340. The issue is not one of contributory negligence; it is whether the party relied upon his own investigation and judgment of records that accurately disclosed the relevant fact rather than upon the alleged misrepresentation. *Watson*, 112 P.3d at 795.

In *Watson*, similar to this case, the plaintiff claimed breach of contract and the defendants alleged fraud, claiming they were misled in the purchase of a business. The district court considered whether the defendants had proven fraud in their reliance upon the plaintiff's books and records. Apparently, the defendants' review of the books and records was cursory, although they were given multiple opportunities to examine the

records. Upon motion for summary judgment, the district court dismissed the fraud claim

on the grounds that "Defendants' due diligence foreclosed any reasonable or actual

reliance on any allegedly incorrect or fraudulent statements of the Plaintiffs." *Watson*,

112 P.3d at 793.

The Idaho Supreme Court reversed the district court's decision in *Watson*, holding

that the district court erred in its application of *Faw v. Greenwood* because the court

failed to consider whether the books and records defendants actually examined contained

information that disclosed the inaccuracy of the alleged representations. *Watson*, 112 P.3d

at 794. The district court did not analyze the records actually reviewed by the defendants

and determine whether those records would have disclosed the falsity of the alleged

misrepresentations. Absent such a review, the Idaho Supreme Court concluded that the

district court had no basis upon which to find that the undisputed facts established the

defendants conducted significant due diligence. *Id.* at 795. *See also Mannos v. Moss*, 155

P.3d 1166, 1171 (Idaho 2007) (finding district court erred in granting summary judgment

when the court did not consider whether the books and records provided to the plaintiffs

at the time of the purchase would have revealed the financial discrepancies).

This case is factually similar to both *Watson* and *Mannos*. Golden West claims that

it provided information, BBT had the opportunity to review it, and therefore BBT should

be foreclosed from asserting reasonable or actual reliance. BBT does not dispute that it

conducted a review of the Property's books and records at the time. The parties'

agreement specifically indicated that BBT had completed the due diligence and

inspections period and declared all conditions and contingencies to be satisfied.

Notwithstanding its review, BBT claims, as in *Mannos*, that the books and records Golden West provided for BBT's review did not disclose the alleged misrepresentations. BBT alleges that the tax returns Mr. Larson reviewed under reported income in early years and misrepresented expenses in later years of the business' operation, therefore providing a false indication of the future profitability of the business and misstating the Property's true financial condition and lack of capacity for exceptional revenue growth.

Mr. Larson acknowledges he reviewed the tax returns for the car wash business from 2003, 2004, and 2005 during the purchase and sale negotiations, and therefore admits he knew of the extreme increase in revenue as reported on the tax returns. However, Mr. Larson asserts that Golden West has since provided "actual financial records" that he has now been able to compare with the tax returns. (Aff. of Larson ¶¶ 5–6, Dkt. 41.)[3] Only as a result of that comparison does Mr. Larson claim to have uncovered the discrepancies between what was reflected on the actual financial records and the business tax returns provided at the time of the 2006 purchase and sale negotiations. BBT is claiming, therefore, that its review of the tax returns did not and

---

[3] In its reply memorandum, Golden West seeks to strike the Larson Affidavit, specifically paragraphs sixteen and eighteen, the two attached exhibits, and "any other paragraphs" that contain similar testimony, or contain "conclusory assertions of law and fact," without specifically identifying the objectionable language. Upon review, the Court finds that paragraphs five and six of the Larson Affidavit are not subject to Golden West's objection, state objective facts and conclusions admissible pursuant to Fed. R. Civ. P. 56, and are therefore relied upon by the Court. As to the other portions of the Larson Affidavit, the Court finds it unnecessary to consider them in its opinion, and Golden West's request to strike the Affidavit will be denied as moot.

would not have disclosed the flat revenue stream and the Property's inability to sustain such exponential growth.

None of the records allegedly reviewed by Mr. Larson in the summer of 2006, other than a portion of the 2005 tax return, were provided to the Court. Golden West's factual representations as to what records it did provide are exceedingly vague. Ms. Jarman simply states she "provided the defendants with information concerning the expenses and income of the storage and car wash business." (Aff. of Jarman at 4, Dkt. 14.) None of this information is in the record before the Court other than a portion of the 2005 tax return, which BBT represented it possessed at the time of negotiations. (Aff. of Jarman at 5, Dkt. 14.) Golden West therefore claims that, based solely upon the 2005 tax return which disclosed the increase in revenue, BBT had everything at its disposal reflecting the discrepancies that it now complains about.

However, Golden West misses the mark. Golden West has not met its burden upon summary judgment to establish that, as a matter of law, BBT should be foreclosed from establishing reasonable reliance based upon the due diligence period and removal of the record inspection contingency. The Court has none of the financial records Golden West claims it provided BBT at the time of the purchase negotiations. Therefore, the Court cannot make any educated analysis of the records actually reviewed by BBT and whether those records would have disclosed the falsity of the alleged misrepresentations.

The only record the Court does have is a portion of the 2005 tax return, which merely reflects a "summary" of expenses for the 2005 tax year that Golden West reported

for tax purposes and "net earnings" of $156,422. The Court assumes that the 2003 and 2004 tax return contain a similar summary. But the examination of a tax return would not necessarily show the actual expenses or income of the Property on a monthly basis delineated in any meaningful way. Golden West does not purport to have provided BBT with its balance sheet, monthly income and expense reports, check registers, accounts payable or accounts receivable reports, which might have given a more accurate picture of the monthly income and expenses of the business. A tax return, on the other hand, is nothing more than the income and expenses as reported for tax purposes. The tax return might have been prepared on a cash or an accrual basis. Accordingly, the 2005 tax return represents the reported income and expenses attributable by the taxpayer to the 2005 tax year, and nothing more.

BBT now claims that costs such as car wash supplies, water and sewer costs, and payments to Ms. Jarman's son, Mark Rhodes, were not disclosed accurately to BBT or simply not disclosed at all. Other than the large increase in reported revenue from 2004 to 2005, Golden West has not demonstrated where the tax returns illustrate these monthly expenditures, or how the tax returns would have disclosed to BBT that its revenue stream was consistent each year rather than as represented by a large increase from 2004 to 2005.

*Watson* and *Mannos* both instruct the Court that, unless the Court evaluates the books and records actually provided to the purchaser to determine whether those records would have revealed the alleged misrepresentations or omissions, summary judgment is inappropriate. On the scanty record before the Court, the Court will not guess whether the

discrepancies Mr. Larson claims he has just now uncovered were or were not disclosed in the books and records provided to BBT. In this case, there is a disputed issue of material fact, because Golden West claims it provided tax returns which disclosed the material discrepancy that BBT now claims constitutes fraud, while BBT claims that only after examining the "actual financial records" that were not provided to them during the due diligence period did the discrepancies become apparent.

Absent evidence that Golden West gave BBT the records that BBT is now relying upon to illustrate the true financial condition of the Property, "it is not a defense that the party alleging fraud could have ascertained the truth by conducting a more through investigation." *Watson*, 112 P.3d at 795. And until the Court can analyze the records actually reviewed by BBT, and determine whether those records would have disclosed the falsity of the alleged misrepresentations, the Court cannot hold as a matter of law that BBT is unable to prove justifiable reliance by virtue of its due diligence. *Watson*, 112 P.3d at 795.

### (3) *Defendants' Counterclaim for Mutual Mistake*

A mistake is an "unintentional act or omission arising from ignorance, surprise, or misplaced confidence." *Leydet v. City of Mountain Home*, 812 P.2d 755, 758 (Idaho Ct. App. 1991) (citing *Bailey v. Ewing*, 671 P.2d 1099, 1101 (Idaho Ct. App. 1983)). The mistake must be material, that is, so substantial and fundamental as to defeat the object of the parties. *Id*. A unilateral mistake generally does not offer grounds for relief, although it may do so in certain circumstances. *Id*. A mutual mistake, which will provide grounds for

relief, occurs when both parties, at the time of contracting, share a misconception about a basic assumption or vital fact upon which they based their bargain. *Id*. Some courts require the parties to have the same misconception about the same basic assumption or vital fact. *Id*. However, the doctrine of mutual mistake also includes situations where the parties proceed with different misconceptions concerning the same basic assumption or vital fact. *Id*. Idaho adheres to the latter view and requires that the assumption of fact held by both parties must be the same for the doctrine of mutual mistake to apply. *Id*.

In the instant case, there appears to be a material issue of fact that would preclude summary judgment on the claim for rescission based upon mutual mistake. Both parties admit that the 2005 tax return showing revenue of over $100,000, well above the revenue reflected in the 2003 and 2004 tax returns, was the key piece of information relied upon by the parties in consummating the transaction. Presumably, the future revenue growth of the Property could have impacted the purchase price arrived at by both parties. If the projected revenue growth was indeed false, it could have impacted the parties' decisions as to the purchase price of the Property, thereby creating a mutual mistake of fact.

Therefore, the Court concludes that a genuine issue of material fact exists precluding summary judgment on Golden West's motion.

(4) *Statute of Limitations*

A three-year statute of limitation for fraud is established by Idaho Code § 5-218(4). A cause of action for fraud is not deemed to have accrued until discovery by the aggrieved party of the facts constituting the fraud. *Mason v. Tucker and Assoc.*, 871 P.2d

846, 852 (Idaho Ct. App.1994). In its reply memorandum, Golden West interjects the argument that the statute of limitations applies to preclude BBT's affirmative defense and counter claim, contending that BBT knew of the income spike because BBT possessed the 2003, 2004, and 2005 tax returns for the Property. However, BBT's fraud claim is premised upon what it claims to have recently uncovered by comparing the actual financial documents to the tax returns. Neither party established a date as to when BBT purportedly discovered the fraud.

Nor can the Court, based upon record before it, assume that BBT should have known of the alleged fraud during the Summer of 2006. As explained above, the business tax returns merely provided a summary of reported income and expenses. And the tax returns, as BBT acknowledged, did show a tremendous increase in reported revenue for 2005 compared to the prior year. But the essence of BBT's fraud claim is that it did not have the opportunity to examine other books and records that would have revealed not a spike in income, but a flat revenue stream.

Accordingly, the Court cannot on the record before it conclude as a matter of law that BBT should have known that a claim for fraud might have existed in the Summer of 2006. Triable issues of material fact remain.

## 2. Motion to Strike

The Court conducted a hearing on BBT's Motion to Strike on October 5, 2010, and thereafter directed BBT to file an amended motion because it had not identified with particularity the specific portions of the Jarman Affidavit, and supplements thereto, that it

sought to strike. The Court instructed the parties that it would determine if a response to the amended motion would be necessary after considering the motion in the context of the Motion for Summary Judgment. BBT filed its Amended Motion to Strike on October 19, 2010, (Dkt. 44). The Court finds no response to the Amended Motion is required, as the Court did not rely upon any of the statements and exhibits BBT sought to strike. Therefore, as more fully explained, the Motion to Strike will be denied as moot.

Specifically, BBT requested the following information be stricken: (1) the last sentence of paragraph 4 referencing Jarman's purported knowledge of default on the first Deed of Trust; (2) paragraph 5 referencing Jarman's assessment of value of the Property; (3) paragraph 6 beginning with the statement "to render an accurate estimate of the 2005 income" and continuing through the remainder of paragraph 6, referencing Jarman's representations that she "went to some lengths to insure that no misrepresentations were made" and her verbal statements to Defendants; (4) paragraph 10 concerning Jarman's knowledge of the revenue and expenses of the Property while owned by BBT; (5) paragraph 11, which references Exhibit I, a handwritten summary of information; (6) paragraph 14, which BBT claims refers to privileged settlement communications; (7) paragraph 15 and Exhibits K and L, which reference BBT's struggle to maintain payments due to the worsening of the economy, and which BBT claims were made in the context of settlement communications; and (8) the portions of the supplemental affidavits that repeat the above information.

Golden West argues that items 6 and 7, above, and Exhibits K and L wherein BBT

states it cannot pay its obligations due under the Note because of the economic downturn and corresponding drop in revenue, provide evidence that BBT had no intention of suing BBT for fraud, and its only reason for non-payment was because it was unable to. BBT asserts that the statements were made in the context of settlement negotiations.

Fed. R. Evid. 408 prohibits the admission of statements "made in compromise negotiations regarding the claim" when offered "to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction." Rule 408 is not applicable when compromise evidence is offered for a purpose other than to prove the validity, invalidity, or amount of a disputed claim. (Official Cmt. 2006 Amendment Fed. R. Evid. 408).

Assuming the statements were made in the context of settlement, Rule 408 may apply to preclude the statements made about the economic downturn forcing BBT to suspend payments on the Note. However, the Court does not decide the issue.

The Court need not rely upon any of the objectionable statements, including the statements about the economic downturn. In reaching its decision on the motion for summary judgment, none of the statements were material or relevant to the Court's decision. While it may be true that the economic down turn caused financial difficulty, the economy in 2009 has no bearing upon the alleged representations actually made to BBT in 2006. Additionally, none of the other statements referencing Jarman's opinion of the Property's value, revenue of the Property while under BBT's ownership, Ms. Jarman's "great lengths" to ensure she made accurate representations without any

reference to either the specific representation made or the documentation provided to

BBT for them to make their own analysis, were relevant to the Court's determination that

the Motion for Summary Judgment should be denied.

**3. Motion for Judicial Notice**

The Motion for Judicial Notice, filed on November 16, 2010, contained additional

authorities and argument (Dkt. 52.). Judicial notice under Fed. R. Evid. 201 is appropriate

to take judicial notice of "adjudicative facts." To the extent that Golden West's motion

presents additional argument and supplemental authority, Rule 201 does not provide

authority for the Court to consider the arguments and case law presented.

The Motion is more akin to a request to present supplemental briefing and

additional authority. The Court neither invited nor requested the parties to do so. The

Court considered Golden West's statute of limitations argument under the well

established statutory authority, and found triable issues of fact exist. The Motion will

therefore be denied.

**CONCLUSION**

Golden West argued BBT's reliance was unjustified as a matter of law because

BBT's due diligence, and written waiver of the due diligence contingency, precluded

BBT from proving an essential element of its prima facia case of fraud, namely justifiable

reliance. However, Golden West failed to meet its burden of proof. Golden West did not

provide the Court with the records BBT actually reviewed such that the Court could

analyze the records and determine whether those records would have disclosed the falsity

of the alleged misrepresentations. A portion of the 2005 tax return, which was the only financial record Golden West provided, does not show the actual expenses on a monthly basis, or even on a yearly basis, for the Property. It represents the reported income and expenses attributable to the 2005 tax year, and nothing more. BBT introduced admissible evidence that, in 2006, Defendant Larson received the 2003, 2004, and 2005 tax returns, and only now has had the opportunity to review "actual financial records in response to" discovery requests in this lawsuit.

Under the holding of *Watson v. Weick*, 112 P.3d 788 (Idaho 2005), the Court can not enter judgment as a matter of law as to BBT's claim of fraud or its claim for mutual mistake. Because fraud was plead as an affirmative defense to the breach of contract claim, the Court must also deny Golden West's motion on its claim for breach of contract.

## <u>ORDER</u>

**NOW THEREFORE IT IS HEREBY ORDERED:**

1)      Plaintiff's Motion for Summary Judgment (Dkt. No. 13) is **DENIED**,

     consistent with the Court's decision herein;

2)      Defendant's Motion to Strike, as amended, (Dkt. No. 23, 44) is **DENIED as**

     **MOOT**.

3)      Plaintiff's Motion for Judicial Notice (Dkt. 52) is **DENIED**.

DATED: November 22, 2010

_____
Honorable Candy W. Dale
Chief United States Magistrate Judge