UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| GOLDEN WEST HOLDINGS, LLC, an Idaho limited liability company,<br><br>　　　　Plaintiff/Counterdefendant,<br><br>　v.<br><br>BBT HOLDINGS, LLC, a California Limited liability company; TED LEROY LARSEN; individually; PEGGY K. LARSEN, individually; BROCK K. LARSEN, individually; BARBARA A. THOMAS, aka BARBARA A. LARSEN, individually; BRIAN L. LARSEN, individually; JULIE SCHINDLER, individually; and DOES I through X,<br><br>　　　　Defendants/Counterclaimants. | Case No. 1:10-cv-337-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

# INTRODUCTION

Before the Court is the Motion for Protective Order filed by Defendants BBT Holdings, LLC, and the Larsens (collectively, "BBT"), on January 27, 2011. BBT filed the motion in response to a subpoena served upon Home Federal Bank (the "Bank"), the lender that financed BBT's purchase of the A-1 Storage and Car Wash from Plaintiff.

**MEMORANDUM DECISION AND ORDER - 1**

Pursuant to an expedited briefing schedule ordered by the Court, Plaintiff Golden West Holdings, LLC, ("Golden West"), filed its opposition to the protective order on February 7, 2011.

The Court conducted a hearing on March 7, 2011, and requested the parties provide supplemental briefing regarding the relevance of the documents Golden West seeks from the Bank to the claims and defenses presented in this action. The parties provided their supplemental briefs on March 16 and 23, 2011. (Dkt. 74, 75.) Upon reviewing the parties' memoranda, the Court determined an in camera review of the Bank's file was necessary, and issued an order requiring BBT to submit the records that are the subject of the present dispute to the Court. BBT complied, and the Court received the Bank's loan file on April 8, 2011.

The Court has completed its review of the Bank's loan file, and issues the following decision requiring BBT to permit the Bank to disclose certain documents relevant to the claims and defenses in this lawsuit from its file, as explained below.

## BACKGROUND

This lawsuit arises from BBT's purchase from Golden West in or about July of 2006 of a storage facility and car wash business (the "Property"), known as the A-1 Storage and Car Wash, located in McCall, Idaho.[1] Defendant Ted Larson, the managing member of BBT, submitted an offer to purchase the Property that Donna Jarman, the

---

[1] The Court has abbreviated the facts of this case for purposes of this motion. The Court's Memorandum Decision and Order denying Plaintiff's Motion for Summary Judgment, (Dkt. 53), contains additional factual details.

principal of Golden West, accepted on July 10, 2006. Golden West agreed to finance a portion of the purchase price in the amount of $607,500.00 pursuant to a Promissory Note secured by a second deed of trust. BBT secured the balance of the purchase price via a loan obtained from Home Federal Bank (the "Bank"), which loan also was secured by the Property.

As a condition of the sale, BBT was to perform a "personal due-diligence" inspection of Golden West's financial records. Defendant Larson, on behalf of BBT, reviewed the documentation Golden West provided, and elected to proceed with the transaction. The parties agreed to close on or before November 15, 2006.

On November 15, 2006, BBT, together with the other named defendants, executed a Promissory Note in the original principal amount of $607,500.00, in favor of Golden West for the purchase of the Property, which Note is secured against the Property pursuant to a Deed of Trust recorded in Valley County, Idaho. The Golden West Note and Deed of Trust were recorded subsequent to, and therefore subordinate to, a first Deed of Trust held by the Bank in the original principal amount of $2,835,000.00.

Beginning in December of 2009, BBT ceased paying the monthly installments due and owing under the Golden West Note. The parties tried unsuccessfully to negotiate a solution until Golden West filed this lawsuit on June 9, 2010. The Complaint alleges BBT breached the terms of the Note by failing to make the monthly payments. (Dkt. 1.)

BBT asserted two counterclaims, the first requesting rescission of the contract based upon mutual mistake, and the second asserting damages for fraud. BBT contends

Golden West misrepresented the amount of income generated by the storage facility and car wash business for the three years prior to BBT's purchase, and had BBT known the true facts, BBT would not have purchased the Property. Golden West denies BBT's claims, contending the downturn in the economy is to blame for BBT's financial woes.

In support of its motion for protective order, BBT represents that it defaulted on the Note with the Bank and, in 2009 entered into negotiations with the Bank to modify the terms of its mortgage. Ultimately, BBT secured a loan modification agreement in November of 2010. Golden West has requested information both from BBT and from the Bank regarding the loan modification, arguing that such information is relevant to BBT's purported damages. Specifically, Golden West served a Subpoena upon the Bank seeking "any and all documents and/or information in [the Bank's] possession relating to the purchase, sale and financing of [the Property] . . ." In addition, Golden West's Request for Production No. 15 and 16 requests a copy of the Loan Modification Agreement between BBT and the Bank, and "all documents relevant to the Loan Modification Agreement," including, but not limited to, the Bank's appraisal of the Property.

BBT seeks a protective order limiting the scope of production to the Bank's loan file with regard to the 2006 loan application and documentation relating to the Bank's perfection of its security interest, and the final copy of the Loan Modification Agreement. BBT argues that none of BBT's financial information, or its members' financial information, is relevant to the claims in this lawsuit. In addition, BBT contends that the notes, correspondence, and negotiations that occurred between BBT and the Bank prior to

**MEMORANDUM DECISION AND ORDER - 4**

execution of the Loan Modification Agreement are privileged communications under Fed. R. Evid. 408 and constitute attorney work product. BBT produced a privilege log documenting the basis for asserting the privileges, explaining that the loan workout with the Bank hinged heavily upon the strategy of Defendants in this lawsuit.

Golden West counters by arguing any privilege was waived by BBT's discussions and disclosures to the Bank, a non-party to this lawsuit. In addition, Golden West asserts that the Rule 408 privilege against disclosure of confidential settlement discussions does not apply because BBT's claim with the Bank was not "in dispute," a precondition to application of Rule 408.

The parties attempted to resolve the instant discovery dispute, and BBT provided a certification that it attempted to confer with Golden West without resort to court action. (Dkt. 68.)

## DISCUSSION

**1. Rule 26 and Rule 45**

Discovery is permitted "regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). However, parties are not given unfettered license to obtain all information, no matter how tangentially relevant it might be. In this case, both parties agree that Rule 45 and Rule 26 provide a mechanism

by which BBT may seek a court order limiting the scope of Golden West's discovery requests and preventing disclosure by the Bank pursuant to the subpoena.

Fed. R. Civ. P. 45 provides that, "[o]n timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it . . . (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies." Fed. R. Civ. P. 45(c)(3)(A)(iii). "Paragraph (c)(3) explicitly authorize[s] the quashing of a subpoena as a means of protecting a witness from misuse of the subpoena power." Fed. R. Civ. P. 45, Advisory Comm. Note, 1991 Amendment. Rule 26(c) also authorizes the Court to issue a protective order "for good cause" to protect "a party or person from annoyance, embarrassment, oppression or undue burden or expense." Fed. R. Civ. P. 26(c)(1). The party seeking a protective order must demonstrate that "good cause" exists for the protection of that evidence. *Rivera v. NIBCO, Inc.*, 384 F.3d 822, 827 (9th Cir. 2004).

"Good cause" is established where it is specifically demonstrated that disclosure will cause a "specific prejudice or harm." *Rivera*, 384 F.3d at 827. But "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Rivera*, 384 F.3d at 827 (quoting *Phillips ex. rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1211-12 (9th Cir. 2002)). Both Rule 45 and Rule 26(c) allow the Court to consider BBT's motion and tailor appropriate relief to protect disclosure of work product or other confidential information.

Consistent with the above standards, the Court must conduct a two part inquiry. First, the Court must determine whether the information sought is relevant under Rule

26(b). A protective order's "purpose . . . is to prevent harm by limiting disclosure of relevant and necessary information." *Cacique, Inc. v. Robert Reiser & Co., Inc.*, 169 F.3d 619, 622–23 (9th Cir. 1999) (quoting *Sega Enterprises v. Accolade, Inc.*, 977 F.2d 1510, 1532 (9th Cir.1992). If the information is relevant, then the Court must determine whether disclosure should be limited otherwise or even prohibited due to the alleged confidentiality of the contested information. *See Beach v. J.D. Lumber, Inc.*, No. 2:08-cv-416-EJL-REB, 2009 WL 3060208 *3 (D. Idaho Sept. 22, 2009).

## 2. Relevance

BBT seeks to exclude from discovery three categories of information: (1) Defendants' personal financial statements provided to the Bank in support of the Loan Modification Agreement; (2) documents contained in the Bank's file concerning loan modification negotiations and documentation of the loan modification between the Defendants and the Bank between 2010 and 2011; and (3) direct communications between Defendants, their counsel, and the Bank that occurred during 2010 and 2011. BBT does not object to production of the Bank's loan file with regard to the 2006 purchase of the Property, nor does it object to production of the executed Loan Modification Agreement executed in November of 2011. Therefore, to the extent the Subpoena and Request for Production No. 15 and 16 request such information, BBT and the Bank must provide it to Golden West.

Upon review of the Bank's loan file, the Court finds that the subpoena is overly broad and requests information unrelated to the claims or defenses presented in this

**MEMORANDUM DECISION AND ORDER - 7**

litigation. The claims in this case involve breach of the loan agreement executed by the parties in 2006 for the purchase of the Property and alleged fraud concerning statements made to induce BBT to purchase the Property. The fraud claim is based upon the tax returns provided to BBT, upon which BBT relied to prepare an analysis of projected income of the Property for future years.

Accordingly, correspondence, communications, and negotiations between members of BBT and the Bank to restructure the terms of its loan have no bearing upon the claims or defenses of this case, and are not relevant. The Larsens'[2] personal financial statements, personal federal and state tax returns, and any other financial information compiled or analyzed by the Bank regarding their individual assets and liabilities, income and loss, credit history, or the like similarly are not relevant to the claims and defenses in this matter. BBT's claimed damages relate to operating shortfalls of the Property, not to its members' personal financial situation.

However, the Bank's loan file does contain documents prepared by BBT or its members that provided the Bank with the Property's ongoing financial health in relation to the loan BBT obtained in 2006. These documents include financial spreadsheets establishing operating revenue, income spreads, and income statements for the Property for 2006, 2007, 2008, and 2009. In addition, Ted Larsen prepared a statement in January of 2009 for the Bank providing a status report of the Property's business operations. Upon

---

[2] The Court's reference to the Larsens is meant to include Ted and Peggy Larsen, Brock Larsen, Barbara Thomas aka Barbara Larsen, Brian Larsen, and Julie Schindler.

**MEMORANDUM DECISION AND ORDER - 8**

reviewing these financial documents, which relate directly to the Property's financial health from and after its purchase by BBT, the Court finds them relevant to the fraud claim or defenses therto.

The Court agrees with Golden West that the income and expenses BBT incurred from the time it purchased the Property to the present, as compared to those incurred by Golden West and disclosed to BBT in 2006, may be relevant to BBT's claim that Golden West misrepresented the historical income and expenses of the Property. Additionally, the financial records of the Property may have some bearing upon when Ted Larsen, the managing member of BBT, knew or should have known of the alleged financial misrepresentations of Golden West. The fraud claim places the historical income and expense of the Property at issue, and therefore, the income and expenses of the Property while BBT operated it may be relevant.

### 3. Privilege

BBT contends that the financial records of the Property are protected under Fed. R. Evid. 408, which prohibits the use of conduct or statements made in compromise negotiations regarding the claim, when offered to prove liability for, invalidity of, or amount of a claim that was disputed. The Rule excludes evidence only when the "purpose is proving the validity or invalidity of the claim or its amount," and an offer for another purpose is not within the rule. 1972 Cmt., Fed. R. Evid. 408. The Court finds that Rule 408 does not apply to the financial records of the Property provided by BBT to the Bank, as they were not made in compromise negotiations regarding the claims at issue in the

**MEMORANDUM DECISION AND ORDER - 9**

Complaint and Counterclaim in this lawsuit. While the financial status report Ted Larsen prepared in January of 2009 may fairly be characterized as providing the reasons for re-negotiating the terms of BBT's loan with the Bank, the report and the historical financial records of the Property while under BBT's management and operation are not being sought by Golden West to prove the invalidity of the Bank's claim. Rather, the information is sought for this lawsuit to negate an essential element of BBT's fraud claim, namely the falsity of Golden West's representations before the purchase in 2006 was consummated and when BBT might have been put on notice that such representations were untrue.

## CONCLUSION

Based upon the analysis above, the Court finds that BBT is partially entitled to the protection it seeks. The personal financial records of the Larsens provided to the Bank, and their communications with the Bank regarding re-negotiation of its loan, are not relevant to the claims or defenses raised by the parties in this lawsuit. However, the financial information BBT and its managing members provided to the Bank regarding the income, profits, and losses of the Property, as well as any statements made to the Bank regarding the Property's financial status, may be relevant to this litigation. BBT does not object to production of the Bank's loan file with regard to the 2006 purchase of the Property, nor does it object to production of the final executed Loan Modification Agreement. Therefore, the Court presumes that the 2006 loan file and the executed Loan Modification Agreement also will be produced if BBT has not done so already.

# ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1) Defendants' Motion for Protective Order (Dkt. 67) is **GRANTED IN PART AND DENIED IN PART.** The parties are instructed to permit the Bank to answer the subpoena consistent with the Court's opinion expressed herein.



DATED: April 27, 2011

Honorable Candy W. Dale
Chief United States Magistrate Judge